## UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **JUDITH A. SISTI** | &#124; |
| **Plaintiff** | &#124; |
| | &#124; |
| **Vs.** | &#124;      **Civil Action No.** |
| | &#124; |
| **FEDERAL HOUSING FINANCE** | &#124; |
| **AGENCY, FEDERAL HOME LOAN** | &#124; |
| **MORTGAGE CORPORATION, AND** | &#124; |
| **NATIONSTAR MORTGAGE, LLC** | &#124; |
| **Defendants** | &#124; |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND DAMAGES

### *Introduction*

1.     Plaintiff, Judith A. Sisti, is the owner of real property located at 76C Valley Green
Court, North Providence, Rhode Island ("Property"), which is her primary residence.
Through this action Plaintiff challenges the lawfulness of the foreclosure sale of her
residence which occurred on May 17, 2016, by certain Defendants: The Federal
Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), an agency or
instrumentality of the federal government; Freddie Mac's conservator and regulator,
the Federal Housing Finance Agency ("FHFA"), a federal agency; and Nationstar
Mortgage, LLC. ("Nationstar") acting as an agent of Freddie Mac and FHFA.
Plaintiff seeks declaratory relief, injunctive relief, damages, and other relief from this
Court, because Defendants Freddie Mac and FHFA have a policy to deprive
homeowners like the Plaintiff of their interest in their homes by conducting
foreclosure sales in Rhode Island without providing homeowners with adequate
notice and an opportunity for a meaningful hearing, as required by the Due Process

clause of the Fifth Amendment to the Constitution of the United States, and other laws. Pursuant to this policy, the Defendants are jointly seeking to deprive the Plaintiff of her interest in the Property, and cause harm to her in various other ways hereinafter stated.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1331, because this case arises under the Constitution and laws of the United States.

3.      Further, this Court has jurisdiction over the current action and all defendants pursuant to 12 U.S.C § 1452 (f)(2) because this case is brought against Freddie Mac.

4.      The principal events giving rise to the claims stated herein occurred in this district and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391 (c)(2).

5.      This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

## THE PARTIES

6.      The Plaintiff Judith A. Sisti is a citizen of the United States who resides at 76C Valley Green Court, North Providence, RI ("Property").

7.      The Federal Housing Finance Agency ("FHFA") is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. § 4511 *et seq*.

8.      The Federal Home Loan Mortgage Corporation ("FHLMC" and "Freddie Mac") is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing

ongoing assistance to the secondary market for residential mortgages, and promoting

access to mortgage credit throughout the nation by increasing the liquidity of

mortgage investments and improving the distribution of investment capital available

for residential mortgage financing. See 12 U.S.C. § 1451 note.

9.      Nationstar Mortgage, LLC ("Nationstar"), is a limited liability company organized

under the laws of the state of Delaware with a principal place of business in the state

of Texas.

## GENERAL FACTUAL ALLEGATIONS

### *The Conservatorship of FHFA over Freddie Mac*

10.     In accordance with the Housing and Economic Recovery Act of 2008 ("HERA"), the

federal government established FHFA as a federal agency to supervise and regulate

Freddie Mac and affiliated entities, the Federal National Mortgage Association

("Fannie Mae") and affiliated entities, and any Federal Home Loan Bank. See 12

U.S.C. §§ 4502 (20), 4511(b)(2).

11.     Among the powers the federal government granted to the FHFA pursuant to HERA

was the power of its Director to place Freddie Mac into conservatorship under the

FHFA and the power of the FHFA to operate and control all of Freddie Mac's

operations as its conservator.

12.     On or about September 7, 2008, the Director of the FHFA placed Freddie Mac under

the conservatorship of the FHFA. See Statement of FHFA Director James B.

Lockhart, http://www.treasury.gov/press-center/press-

releases/Documents/fhfa_statement_090708hp1128.pdf , accessed May 12, 2014.

(Attached as Exhibit 1).

13.  In January 2010, the Congressional Budget Office (hereafter "CBO") concluded that the actions taken by FHFA to place Freddie Mac under conservatorship effectively made Freddie Mac a government entity, based on the federal government's control and ownership of Freddie Mac. Budgetary Treatment of Fannie Mae and Freddie Mac, (Congressional Budget Office Background Paper, 2010), available at https://www.cbo.gov/sites/default/files/111th-congress-2009-2010/reports/01-13-fanniefreddie.pdf (Attached as Exhibit 2) at pages 1 ("In the judgment of the Congressional Budget Office (CBO), those actions make Fannie Mae and Freddie Mac part of the government and imply that their operations should be reflected in the federal budget"). Under the CBO's accounting, "the mortgages owned or guaranteed by Fannie Mae and Freddie Mac were treated as loans and guarantees of the federal government." Id. at page 7.

14.  In 2013, the CBO again concluded, "the federal government is now the effective owner of [Freddie Mac], any gain or loss arising from a change in the way the distressed mortgages are handled by [Freddie Mac] would ultimately accrue to taxpayers." See Options for Principal Forgiveness in Mortgages Involving Fannie Mae and Freddie Mac (Congressional Budget Office, Mitchell Remy & Damien Moore, Working Paper No. 2013-02) available at https://www.cbo.gov/sites/default/files/113th-congress-2013-2014/workingpaper/44114_WorkingPaper-OptionsPrincipalForgivenesl_1.pdf (Attached as Exhibit 3) at page 1.

15.  As conservator, FHFA controls all of the rights, titles, powers and privileges of the shareholders and board of directors of Freddie Mac. See Federal Home Loan

Mortgage Corporation, <u>Annual Report, Form 10-K</u>, for the fiscal year ended December 31, 2015, <u>www.freddiemac.com/investors/er/pdf/10k_021816.pdf</u> , relevant portions attached as Exhibit 4, at pages 157-158, 177, 216.  Because FHFA as conservator has succeeded to the rights of all shareholders, the FHFA elects the directors, not shareholders. See Exhibit 4 at page 335.

16.     As conservator, FHFA determines the size of Freddie Mac's Board of Directors and the scope of its authority. See Exhibit 4 at page 335. Since the start of the conservatorship and as recently as February 12, 2016, FHFA elected all of the directors and the Chief Executive Officer of Freddie Mac. See Exhibit 4 at page 335. FHFA delegated certain authority to the Board of Directors, while retaining certain significant authorities for itself. See Exhibit 4 at pages 157. FHFA may amend or withdraw the delegation of authority at any time. Exhibit 4 at page 157.

17.     According to Freddie Mac, "FHFA controls our business activities." See Exhibit 4 at page 177. FHFA determines the strategic direction of Freddie Mac, defines its business objectives, and mandates activities, even though the objectives and activities FHFA mandates are costly to implement, have adversely affected Freddie Mac's financial results, and reduces Freddie Mac's profitability. See Exhibit 4 at page 157. Freddie Mac's management decisions "are subject to review and/or approval by FHFA and management frequently receives direction from FHFA on various matters involving day-to-day operations." See Exhibit 4 at page 157.

18.     Freddie Mac's directors serve on behalf of, and exercise their authority as directed by, FHFA. Exhibit 4 at pages 157, 216. As a result of the conservatorship, Freddie Mac is being managed to serve a public mission, which may negatively impact Freddie

Mac's business and profitability. See Exhibit 4 at page 157, 216. Freddie Mac is not managed to maximize shareholder returns. See Exhibit 4 at page 177.

19.     FHFA, as both conservator and regulator, and the United States Treasury, pursuant to the senior preferred stock purchase agreement, prohibits Freddie Mac from paying any dividends to common shareholders. See Exhibit 4 at page 158, 217-219, 274.

20.     According to the FHFA's September 7, 2008 explanation of the conservatorship, there is "no exact time frame that can be given as to when this conservatorship may end." FHFA's conservatorship of Freddie Mac will end, according to said explanation, when the Director of FHFA issues an order terminating the conservatorship, after the Director determines that FHFA's "plan to restore the Company to a safe and solvent condition has been completed successfully." See FHFA, Questions and Answers on Conservatorship, (Sept. 7, 2008), available at http://www.treasury.gov/press-center/press-releases/Documents/fhfa_consrv_faq_090708hp1128.pdf. (Attached as Exhibit 5) at page 2; See also Exhibit 4 at page 217 ("Our future is uncertain, and the conservatorship has no specified termination date. We do not know what changes may occur to our business model during or following conservatorship, including whether we will continue to exist. We are not aware of any current plans of our Conservator to significantly change our business model or capital structure in the near term. Our future structure and role will be determined by the Administration and Congress, and it is possible and perhaps likely that there will be significant changes beyond the near term. We have no ability to predict the outcome of these

deliberations."). See also Exhibit 4 at page 176 ("The conservatorship is indefinite in terms of duration").

21.     As a result of FHFA's conservatorship of Freddie Mac, since September 6, 2008, and continuing now and for the foreseeable future, FHFA directly controls and operates Freddie Mac with all the powers of the shareholders, directors, and officers of Freddie Mac, owns title to all the assets of Freddie Mac, and has broad powers over all business of Freddie Mac.  See Exhibit 4 at Pages 157, 177.

22.     HERA does contain a provision automatically terminating FHFA's conservatorship of Freddie Mac, namely if FHFA's director appoints FHFA as receiver of Freddie Mac. *See* 12 U.S.C. 4617(a)(4)(D).  However, FHFA's control over Freddie Mac will not be terminated upon its being appointed as receiver.  There is no other law, regulation, policy or directive that provides either a date or specifies conditions by which FHFA's control over Freddie Mac will terminate.

23.     Even if the conservatorship were terminated by means other than the appointment of FHFA as receiver of Freddie Mac, Freddie Mac will remain subject to the control of the United States Treasury through the senior preferred stock purchase agreement, senior preferred stock, and warrant to purchase common stock. See Exhibit 4 at page 176, 218. See also Exhibit 4 at page 219 ("The purchase agreement has an indefinite term and can terminate only in limited circumstances, which do not include the end of the conservatorship") and page 157 ("The Treasury Agreements and the senior preferred stock do not contain any provisions causing them to terminate or cease to exist upon the termination of conservatorship").

24.  On or about September 7, 2008, as restated on or about September 26, 2008, Freddie Mac entered into a senior preferred stock purchase agreement, as amended, with the United States Treasury. Pursuant to the senior preferred stock purchase agreement, Freddie Mac transferred to the United States Treasury 1,000,000 shares of preferred stock, senior in right for both dividends and liquidation to all other preferred or common stock of Freddie Mac, with an initial liquidation preference of $1,000.00 per share; a warrant to purchase 79.9% of the common stock of Freddie Mac at a nominal price; and certain restrictions on Freddie Mac's ability to issue new shares, declare dividends, or dispose of assets without the approval of the United States Treasury; in exchange for the commitment of the United States Treasury to extend up to $100 billion (later amended to $200 billion) to maintain the liquidity of Freddie Mac. See Amended and Restated Senior Preferred Stock Purchase Agreement, dated September 26, 2008, available at http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-9-26_SPSPA_FannieMae_RestatedAgreement_N508.pdf, attached as Exhibit 6; see also Exhibit 4 at Pages 2, 157-158, 218.

25.  Since the conservatorship began in 2008 through the first quarter of 2012, Freddie Mac received a total of $71.3 billion from Treasury under the senior preferred stock purchase agreement to maintain a zero net worth. Because the senior preferred stock had an initial liquidation preference of $1 billion, the current aggregate liquidation preference in favor of the United States Treasury for the senior preferred stock is $72.3 billion. See Exhibit 4 at Pages 2, 158.

26.     The United States Treasury owns 100% of the senior preferred stock of Freddie Mac, and holds warrants to purchase 79.9% of the common stock of Freddie Mac at a nominal price on a fully diluted basis on the date of exercise. See Exhibit 4 at page 157-158; see also Fact Sheet: Treasury Senior Preferred Stock Purchase Agreement http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-8-7_SPSPA_FactSheet_508.pdf attached as Exhibit 7.

27.     By virtue of the senior preferred stock purchase agreement, as amended, the United States Treasury is entitled to receive quarterly dividends equal to the entire net worth of Freddie Mac, which results in every dollar of future profits being paid to the United States Treasury.  See Exhibit 4 Pages 1, 156, 158. Similarly, Freddie Mac is not permitted to retain earnings, rebuild a capital position, or pay dividends or other distributions to stockholders other than the United States Treasury. See Exhibit 4 at Pages 1, 156, 158, 217. Dividends are payable only at the direction of the Conservator FHFA and with consent of the Treasury. See Exhibit 4 at page 158, 219.

28.     Through the first quarter of 2016, Freddie Mac paid a total of $98.2 billion in dividends to Treasury on the senior preferred stock. See Exhibit 4 at 2. However, under the terms of the senior preferred stock purchase agreement, dividend payments do not offset prior Treasury draws, and, therefore, the Treasury's ownership interest in Freddie Mac is not reduced by reason of the dividends. See Exhibit 4 at Pages 2, 156.

29.     Pursuant to the senior preferred stock purchase agreement, Freddie Mac is not permitted to redeem the senior preferred stock prior to the termination of the United States Treasury's funding commitment, which commitment will not terminate unless

Freddie Mac is liquidated, Freddie Mac's liabilities are satisfied, or the Treasury has provided the maximum amount of funding available under its commitment to Freddie Mac. See Exhibit 4 at Pages 158, 219-220.

30.   The CBO considers the payments from Freddie Mac to the United States Treasury as "intragovernmental payments, which do not affect net federal outlays." See Exhibit 2 at page 3.

31.   Because Freddie Mac was chartered by Congress to further governmental objectives related to the secondary mortgage market and national housing policies, because the federal government maintains a substantial ownership interest in Freddie Mac, because Freddie Mac is substantially funded by the federal government, because the Board of Directors of Freddie Mac is entirely appointed by FHFA, and because Freddie Mac is under the control of FHFA and/or the United States Treasury, Freddie Mac is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the federal government by the United States Constitution. See DOT v. Ass'n of Am. R.R., 135 S. Ct. 1225, 1232-1233 (U.S. 2015); Lebron v. National Railroad Passenger Corp., 513 U.S. 374 (1995).

***The Agency Relationship between FHFA and Freddie Mac and the Servicing Agent.***

32.   Freddie Mac purchases mortgages that meet its underwriting standards from originators such as banks or thrifts. Freddie Mac holds these mortgages in its retained portfolios or packages them into mortgage-backed securities that it sells to investors. See FHFA Office of Inspector General Evaluation Report, FHFA's Oversight of the Servicing Alignment Initiative, February 12, 2014, available at http://fhfaoig.gov/Content/Files/EVL-2014-003.pdf (attached as Exhibit 8) at page 6.

33.   For the mortgages that Freddie Mac purchases, Freddie Mac enters into contracts with mortgage servicers, including the "Servicing Guide" and other agreements. Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults. Exhibit 8 at Page 8.

34.   Through the "Servicing Guide" and other agreements, Freddie Mac established certain requirements for its servicers to follow when it performs its servicing duties, which include specific instructions on mitigating losses after borrowers default and conducting foreclosures on behalf of Freddie Mac. See Exhibit 8 at pages 8-9.

35.   After FHFA placed Freddie Mac into conservatorship, FHFA has engaged in continuous supervision of Freddie Mac's oversight of its servicers.  See FHFA Office of Inspector General, <u>FHFA's Supervision of Freddie Mac's Controls over Mortgage Servicing Contractors</u>, March 7, 2012, available at http://fhfaoig.gov/Content/Files/AUD%202012-001_0.pdf (Attached as Exhibit 9) at Pages 19-20. FHFA's Office of Inspector General describes "continuous supervision" as "a wide range of ongoing activities designed to monitor and analyze [Freddie Mac's] overall business profile, including any trends or associated emerging risks." See Exhibit 9 at page 20.

### *The Unconstitutional Foreclosure Policy of FHFA and Freddie Mac*

36.   In April, 2011, FHFA created the Servicer Alignment Initiative, as amended by four additional initiatives beginning in January 2012 (collectively, "SAI"), by which the FHFA directs the actions taken by Freddie Mac's mortgage servicers when servicing

a delinquent mortgage loan, in order to maximize the financial benefits to Freddie Mac, and ultimately to the taxpayers. See Exhibit 8 at Pages 9-11.

37. Through the SAI, the FHFA directed Freddie Mac to update its servicing guidelines by adding new standards and timelines by which servicers were to manage delinquent mortgages. See Exhibit 8 at page 10.

38. In the SAI, the FHFA created a policy that requires servicers of Freddie Mac owned mortgages to follow specific state-level timelines for the processing of foreclosures from the date of referral to the attorney/trustee through the date of the foreclosure sale. See Exhibit 8 at page 10.

39. In the SAI, the FHFA has directed Freddie Mac's servicers to use non-judicial foreclosure procedures when foreclosing on residential properties in Rhode Island, including the Plaintiff's Property. The foreclosure policy in the SAI requires servicers of Freddie Mac loans to foreclose on properties without a pre-deprivation hearing in violation of the Due Process Clause of the Fifth Amendment.

*The Plaintiff's interest in the Property*

40. On or about September 10, 1990, the Plaintiff became the co-owner of the Property along with her husband Robert L. Sisti, Sr. as Tenants by the Entirety, by the Warranty Deed from Paul M. Apostolo, which deed is recorded with the land records of the Town of North Providence on September 10, 1990 at Book 212 and Page 889. The deed is attached as Exhibit 10.

41. On or about August 26, 2005, Robert L. Sisti, Sr. borrowed $320,000.00 from Coastal Capital Corp., D/B/A CCAP Mortgage Corp. ("Originating Lender"), which was

evidenced by a promissory note (the "Note") on the same date. The Plaintiff is not an obligor on the Note.

42.  On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of the Originating Lender and Mortgage Electronic Registration Systems, Inc. as nominee for the Lender. The Mortgage was recorded on September 6, 2005, in the land records of the Town of North Providence at Book 2155 and Page 275. The Plaintiff is named as a Borrower on to the Mortgage. The Mortgage is attached as Exhibit 11.

43.  On May 11, 2012, Mortgage Electronic Registration Systems, Inc. as nominee for the Originating Lender purported to assign the Mortgage to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, F/K/A Countrywide Home Loans Servicing, LP, by an assignment recorded on May 21, 2012 in the land records for the Town of North Providence at Book 2788 and Page 77. See Exhibit 12.

44.  On December 31, 2012, Bank of America, N.A. purported to assign the Mortgage to Nationstar Mortgage, LLC, by an assignment recorded on January 7, 2013 in the land records for the Town of North Providence at Book 2840 and Page 57. See Exhibit 13.

45.  On May 9, 2014, Nationstar Mortgage LLC purported to assign the Mortgage to Nationstar Mortgage, LLC, by an assignment recorded on May 21, 2014 in the land records for the Town of North Providence at Book 2938 and Page 266. See Exhibit 14.

### The foreclosure proceedings against the Property

46.  On May 11, 2012, Robert L. Sisti, Sr. passed away, and Plaintiff became the sole owner of the Property.

47.     Several months later, as a result of the financial hardship caused by the loss of her

husband, Plaintiff became delinquent on her mortgage payments.

48.     On or about March 23, 2016, the Defendants, through their foreclosure attorney, sent

a notice of foreclosure sale to the Plaintiff pursuant to Rhode Island General Laws §

34-27-4(b).  However, according to the certified mail receipts, the notice of

foreclosure sale was never delivered to either Plaintiff or the estate of Robert L. Sisti,

Sr.

49.     On or about May 17, 2016, Nationstar, as agent for Freddie Mac, conducted a

foreclosure sale of the Property, in which Freddie Mac presented the highest bid in

the amount of $184,574.06.

50.     On May 25, 2016, Nationstar signed a document (hereinafter referred to as "the

Foreclosure Deed" without prejudice as to its legal effect), which was recorded on

June 21, 2016 in the land records for the Town of North Providence at Book 3080 and

Page 270. The Foreclosure Deed is attached as Exhibit 15.

51.     Following the foreclosure policy in the SAI, neither Nationstar, Freddie Mac, nor

FHFA provided the Plaintiff an opportunity for an evidentiary hearing with Freddie

Mac or FHFA at which the Plaintiff could have an opportunity to confront and cross-

examine persons who supplied information upon which the foreclosure action is

grounded; present arguments and evidence to dispute the allegations of Nationstar,

Freddie Mac, and FHFA prior to the termination of her interest in the Property; be

represented by counsel during a hearing prior to the termination of her interest in the

Property; and to have a neutral informal hearing officer make a determination based

on applicable law and the evidence adduced at a hearing prior to the termination of the Plaintiff's interest in the Property.

52.     Had the Plaintiff had an opportunity for a hearing, she could have presented evidence to challenge the foreclosure in one or more of the following ways:

    a.   Whether Freddie Mac is the current holder of the Mortgage and authorized to exercise the power of sale;

    b.   Whether the Defendants provided all required pre-foreclosure notices under state and federal law and the mortgage documents;

    c.   Whether the Defendants sent a Notice of Default that strictly complies with Paragraph 22 of the Mortgage; and

    d.   Whether the Defendants acted in good faith in their review and offers of loan modifications.

53.     On or about September 2, 2016, the Defendant Freddie Mac filed a complaint for eviction against the Plaintiff in Third Division District Court, Kent County, Rhode Island, 3CA-2016-05786, which action remains pending.

54.     If the Defendants are not enjoined from evicting the Plaintiff, Plaintiff will suffer irreparable harm, in that the Plaintiff will lose possession of her primary residence and she currently has no other place to reside.

## COUNT I – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

55.     Plaintiff realleges and incorporates paragraphs 1-54 by reference.

56.     Pursuant to the foreclosure policy in the SAI, Nationstar, Freddie Mac, and FHFA are acting jointly to deprive the Plaintiff of her ownership rights in the Property by conducting a foreclosure sale pursuant to Rhode Island General Laws Chapter 34-27,

entitled "Mortgage Foreclosure and Sale," which authorizes mortgagees to foreclose the rights of an equitable title holder without judicial process or the opportunity to be heard before the foreclosure sale.

57. When used by federal government actors, such as Freddie Mac and FHFA, the procedures of Rhode Island General Laws Chapter 34-27 do not satisfy the Due Process Clause of the Fifth Amendment before depriving an owner of her or her property. Specifically, Chapter 34-27 does not provide for adequate notice, an opportunity to be heard before the deprivation of property, or the opportunity to recover appropriate damages for an improper deprivation of property.

58. Pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, Freddie Mac and FHFA, as agencies and/or instrumentalities of the federal government, owed a higher degree of notice and hearing to Plaintiff than is provided by Rhode Island General Laws chapter 34-27 before depriving the Plaintiff of her property.

59. The Plaintiff has a significant property interest at stake. The foreclosure, if allowed to take place, permanently deprives the Plaintiff of her ownership, possession, and use of the Property, which she uses as her primary residence; clouds the title to the Property; impairs her ability to sell, rent, or otherwise alienate the Property; taints her credit rating; reduces the chance of her obtaining a future loan or mortgage; subjects her to eviction; and jeopardizes her security in a dwelling place.

60. There is a significant risk of an erroneous deprivation of the Plaintiff's interest through the procedures used by Freddie Mac, and FHFA pursuant to RI General Laws chapter 34-27. To prevent an erroneous deprivation of property, the Due Process

Clause of the Fifth Amendment to the United States Constitution requires Freddie Mac, and FHFA to provide Plaintiff with an opportunity to be heard at a meaningful time on, *inter alia,* any challenge to the true ownership of the Note; any challenge to Freddie Mac's and/or FHFA's authority to foreclose on behalf of the owner of the Note; any challenge to Freddie Mac's and/or FHFA's determination of default under the Note and Freddie Mac's and/or FHFA's calculation of deficiency; any challenge to Freddie Mac's and/or FHFA's determination that the Plaintiff is not eligible for a loan modification, a repayment, or other homeowner assistance option; the opportunity to refinance or reinstate through other sources of funding; whether Freddie Mac and/or FHFA acted in good faith; and any challenge to Freddie Mac's and/or FHFA's compliance with applicable notice procedures.

61.    The government's financial interest in obtaining ownership, possession, and use of the Property is minimal.

62.    There are no exigent circumstances that would justify the lack of a pre-deprivation hearing, nor would a meaningful hearing before a neutral party impose significant fiscal or administrative burdens.

63.    FHFA's foreclosure policy in the SAI violates the Due Process Clause of the Fifth Amendment in that it requires servicers of Freddie Mac loans to deprive homeowners like the Plaintiff of their primary residence through the use of non-judicial foreclosure proceedings which do not provide for a hearing prior to the deprivation of the homeowners' property interest.

64.    Nationstar, Freddie Mac, and FHFA jointly violated the Plaintiff's Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale pursuant

to Rhode Island General Laws Chapter 34-27 without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

65.     As a direct and proximate result of Nationstar's, Freddie Mac's, and FHFA's violation of the Plaintiff's due process rights, the Plaintiff has suffered damages including harm to her credit; costs and expenses of the foreclosure added to her account; a loss of equity in the Property; expenses due to postage, mailing, and long-distance telephone calls; an impairment of her ability to sell, rent, or otherwise alienate the Property; and having her security in a dwelling place jeopardized.

WHEREFORE, The Plaintiff respectfully requests the Court to grant the following relief:

1)     A declaration that the Freddie Mac's and FHFA's policy of using non-judicial foreclosure process in Rhode Island General Laws Chapter 34-27-4 (b), or any foreclosure process that does not provide for adequate notice, a meaningful evidentiary hearing prior to the deprivation of property, and an opportunity to recover damages, violates the Plaintiff's due process rights under the Fifth Amendment to the Constitution of the United States;

2)     A declaration that the foreclosure sale of the Plaintiff's Property on May 17, 2016, was invalid and void;

3)     A declaration that the foreclosure deed recorded on June 21, 2016, in the land records for the Town of North Providence at Book 3080 and Page 270, is invalid and void;

4)     A preliminary injunction and permanent injunction enjoining Freddie Mac and FHFA from foreclosing on the Plaintiff's Property through the use the non-

judicial foreclosure process in Rhode Island General Laws Chapter 34-27-4 (b), or any other foreclosure process that does not provide adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover damages if the foreclosure is deemed erroneous;

5) A temporary injunction, a preliminary injunction and a permanent injunction enjoining Freddie Mac from evicting and removing the Plaintiff and members of Plaintiff's household from the Property, or from selling or transferring the Property;

6) A preliminary injunction and permanent injunction requiring Defendants to execute and cause to be recorded a deed correcting and voiding the aforementioned foreclosure deed and quitting their claim to the Property back to Plaintiff.

7) An order quieting title and declaring the rights and interests of all parties in the Property;

8) Compensatory Damages;

9) Costs; and

10) Such other and further relief as the court considers appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Judith A. Sisti
By her Attorneys,


/s/ Jeffrey C. Ankrom, Esq.
Jeffrey C. Ankrom, Esq. (#7663)
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI, 02903
(401) 274-2652, ext. 138
(401) 453-0310 fax
jankrom@rils.org


/s/ Steven Fischbach, Esq.
Steven Fischbach, Esq. (#3259)
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI, 02903
(401) 274-2652, ext. 182
(401) 453-0310 fax
sfischbach@rils.org

Dated: December 20, 2016