**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

JUDITH A. SISTI,

  Plaintiff,

  v.

FEDERAL HOUSING FINANCE AGENCY, FEDERAL HOME LOAN MORTGAGE CORPORATION, AND NATIONSTAR MORTGAGE, LLC

  Defendants.

Case No.: 1:17-cv-00005-JJM-LDA

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)

Plaintiff claims that Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), a federally chartered private corporation, and the Federal Housing Finance Agency ("FHFA"), a federal agency acting as Freddie Mac's Conservator, violated her Fifth Amendment due process rights when Freddie Mac conducted a non-judicial foreclosure of her property pursuant to state law.  But neither Freddie Mac nor FHFA as its Conservator is a government actor subject to Fifth Amendment constraints.  As a result, Plaintiff's claim fails as a matter of law.

Every federal court to consider whether Freddie Mac or the similarly-situated Federal National Mortgage Association ("Fannie Mae"), which is also under FHFA conservatorship, is a government actor for constitutional purposes—including the Sixth and D.C. Circuits—has held that they are not.  *See, e.g.*, *Herron v. Fannie Mae*, 861 F.3d 160, 169 (D.C. Cir. 2017); *Mik v. Freddie Mac*, 743 F.3d 149, 168 (6th Cir. 2014).

These courts rely on *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995), which provides the test for when an otherwise-private corporation can be deemed a government actor for constitutional purposes.  That test requires, among other things, that the government retain permanent control over the corporation.  Because Freddie Mac was not a government actor before conservatorship, and conservatorship does not give the government

permanent control over Freddie Mac, Freddie Mac cannot be deemed a government actor under *Lebron*.

FHFA, as Freddie Mac's Conservator, likewise is not a government actor for purposes of constitutional claims. Rather, the Conservator assumes Freddie Mac's private status when overseeing Freddie Mac's ordinary business activities, such as foreclosing on defaulted mortgages. Accordingly, Freddie Mac and FHFA are entitled to judgment as a matter of law.

## STATEMENT OF ALLEGATIONS

### A.     FHFA and Freddie Mac in Conservatorship

Freddie Mac is a private, publicly-traded corporation chartered by Congress to stabilize the secondary mortgage market and to promote access to mortgage credit. Compl. ¶ 8; *see also Town of Johnston v. FHFA*, 765 F.3d 80, 82 (1st Cir. 2014).

In July 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq.*), which established FHFA. Compl. ¶ 10. FHFA is an independent federal agency with regulatory and oversight authority over Freddie Mac, Fannie Mae, and the Federal Home Loan Banks. *Id.*

In September 2008, FHFA placed Freddie Mac and Fannie Mae (together, "the Enterprises") into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs." 12 U.S.C. § 4617(a)(2); Compl. ¶¶ 11-12. In its capacity as Conservator, FHFA succeeded to "all rights, titles, powers, and privileges" of the Enterprises and their respective stockholders, boards of directors, and officers. *See* 12 U.S.C. § 4617(b)(2)(A)(i); Compl. ¶¶ 15, 21. Thus, FHFA assumed the power to oversee Freddie Mac's operations. *Id.*

HERA also amended the Enterprises' statutory charters to grant the Treasury authority to purchase securities issued by the Enterprises, so long as they reached "mutual agreement" on the terms. *See* 12 U.S.C. § 1719(g)(1)(A) (Fannie Mae); 12 U.S.C. § 1455(*l*)(1)(A) (Freddie Mac). Pursuant to this authority, Treasury and the Conservator entered into Senior Preferred Stock Purchase Agreements for each Enterprise, through which Treasury agreed to infuse hundreds of billions of taxpayer dollars into the Enterprises as needed. Compl. ¶¶ 24-29.

### B. Foreclosure Proceedings

Plaintiff is the owner of real property located at 76C Valley Green Court, North Providence, Rhode Island (the "Property"). Compl. ¶ 1. In May 2016, Freddie Mac conducted a non-judicial foreclosure sale of the Property and recorded a foreclosure deed. Compl. ¶¶ 49-50.

### C. Plaintiff's Claim

Plaintiff's sole cause of action in this matter is deprivation of property without due process. Compl. ¶¶ 55-65. Specifically, Plaintiff maintains that FHFA and Freddie Mac acted jointly to deprive her of ownership rights in the Property by conducting a non-judicial foreclosure under Rhode Island Chapter 34-27. Compl. ¶ 57. Plaintiff claims that this non-judicial foreclosure violated the Due Process Clause of the Fifth Amendment of the United States Constitution. Compl. ¶¶ 57-58. Based upon these purported due process violations, Plaintiff claims deprivation of ownership in the Property, cloud on title, impairment of her ability to sell, rent or otherwise alienate the Property, damage to her credit rating, reduced chance of obtaining a future mortgage, eviction, and loss of security in her dwelling. Compl. ¶ 59. Plaintiff further claims damages as a result of the alleged due process violation, including costs and expenses of the foreclosure added to her account, loss of equity in the Property, and expenses due to postage, mailing, and long-distance telephone calls. Compl. ¶ 65.

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is decided under the same standard as a motion to dismiss. *Trombley v. Bank of Am. Corp.*, 715 F. Supp. 2d 290, 292 (D.R.I. 2010). A complaint cannot survive such a motion if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (citation omitted). In deciding the motion, the Court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion—here, the plaintiff—and draw all reasonable inferences in the plaintiff's favor." *Id*.

## ARGUMENT

Plaintiff asserts that Freddie Mac and FHFA denied her due process under the Fifth Amendment of the United States Constitution. Compl. ¶¶ 55-65. Plaintiff's assertion fails as a

matter of law. "It is well-settled that the due process provision of the Fifth Amendment serves as a limitation only on governmental, not private, action." *Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 79 (1st Cir. 2005). Freddie Mac is not a government entity, nor do Freddie Mac's actions constitute federal action for purposes of triggering constitutional due process protections. Prior to conservatorship, Freddie Mac was a private corporation. No one contends it was a government actor, nor could anyone—precedent confirms unequivocally that it was not. During conservatorship, FHFA controls Freddie Mac but that control is neither permanent nor governmental, as applicable precedent requires for an otherwise-private corporation to be deemed a government actor. Indeed, when acting as Conservator of Freddie Mac, FHFA is not a government entity for purposes of the Fifth Amendment. When FHFA placed Freddie Mac into conservatorship, the agency stepped into the shoes of a *private* corporation to conduct its day-to-day operations and thereby assumed Freddie Mac's *private* status, not vice versa. Thus, FHFA, as Conservator, does not act as part of the government for purposes of constitutional claims.

## I. FREDDIE MAC IS NOT A GOVERNMENT ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS

Since the 1970s, Freddie Mac has operated as a private corporation "created by federal charter to support the development of the secondary mortgage market." *Town of Johnston*, 765 F.3d at 82. Prior to conservatorship in 2008, Freddie Mac was not a government actor for purposes of constitutional claims. Indeed, the Ninth Circuit examined whether Freddie Mac was a government actor for due process concerns and held that it was not. *American Bankers Mortg. Corp. v. Freddie Mac*, 75 F.3d 1401, 1408 (9th Cir. 1996) (applying *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995)); *see also Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 359 (5th Cir. 1977) (rejecting due process claim brought by a borrower against pre-conservatorship Fannie Mae for commencing a non-judicial foreclosure); *Northrip v. Fannie Mae*, 527 F.2d 23, 30 (6th Cir. 1975) (rejecting claim that pre-conservatorship Fannie Mae was a federal actor subject to the Due Process Clause of the Fifth Amendment).

The key issue here, therefore, is whether conservatorship converted Freddie Mac into a government actor. It did not. Federal courts have unanimously held that Freddie Mac, even in conservatorship, maintains its private identity for purposes of constitutional claims. These courts

rely on *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995), which governs the analysis of whether a federally chartered, private corporation can be deemed a government actor. Under the *Lebron* framework, Freddie Mac is not a government actor because FHFA's conservatorship—even if assumed to amount to *government* control—does not involve *permanent* control.[1]

### A. Federal Courts Have Unanimously Held That the Enterprises Are Not Government Actors While in Conservatorship for Purposes of Constitutional Claims

Every federal court to have considered the issue has held that Freddie Mac and Fannie Mae, while in conservatorship, are not government actors for purposes of constitutional claims. *See, e.g.*, *Herron*, 861 F.3d at 169; *Mik*, 743 F.3d at 168. Most recently, the D.C. Circuit held that conservatorship "does not transform Fannie Mae into a government actor" and dismissed the plaintiff's First Amendment *Bivens* claim. *Herron*, 861 F.3d at 169. Similarly, the Sixth Circuit held that "Freddie Mac is not a government actor who can be held liable for violations of the Fifth Amendment's Due Process Clause." *Mik*, 743 F.3d at 168; *see also Rubin v. Fannie Mae*, 587 F. App'x 273, 275 (6th Cir. 2014) (same in the context of a non-judicial foreclosure).

Likewise, district courts routinely hold that the Enterprises are not part of the government for constitutional purposes while in conservatorship. As one district court explained, "FHFA's conservatorship of Freddie Mac does not and cannot transform that private corporation into a government actor . . . ." *Freddie Mac v. Shamoon*, 922 F. Supp. 2d 641, 645 (E.D. Mich. 2013); *see also, e.g.*, *Matveychuk v. One W. Bank, FSB*, No. 1:13-cv-3464-AT, 2016 WL 4059681, at *3 (N.D. Ga. Jan. 28, 2016) ("Because the FHFA lacks permanent control over Fannie Mae, Fannie Mae is not a state actor, and Plaintiff's constitutional claims cannot survive."); *May v. Wells Fargo Bank, N.A.*, No. 4:11-cv-3516, 2013 WL 3207511, at *5 (S.D. Tex. June 24, 2013) ("[D]espite FHFA's conservatorship, Freddie Mac is not a government actor . . . ."); *Syriani v. Freddie Mac Multiclass Certificates, Series 3365*, No. 12-cv-3035-JFW, 2012 WL 6200251, at *4 (C.D. Cal. July 10, 2012) ("Freddie Mac does not become a governmental actor for Fifth

---

[1] As discussed in Section II below, FHFA's conservatorship of Freddie Mac does not constitute governmental control.

Amendment purposes merely because it is placed into conservatorship."); *Dias v. Fannie Mae*, 990 F. Supp. 2d 1042, 1062 (D. Haw. 2013) ("The Court agrees with those courts . . . that have considered and rejected Plaintiff's argument that Fannie Mae is a government actor by virtue of the FHFA conservatorship."). Notably, the majority of these authorities involve foreclosure disputes, just as this case.

Applying these decisions here, it is clear that by placing Freddie Mac into conservatorship and acting in its capacity as Conservator of Freddie Mac, FHFA did not transform Freddie Mac into a government actor for purposes of constitutional claims.

### B.   *Lebron* Controls the Government-Actor Analysis for Constitutional Claims against Otherwise-Private Corporations and Requires that the Government Retain Permanent Control

The federal courts above have relied on and correctly applied *Lebron* in determining that the Enterprises are not government actors for purposes of constitutional claims. *See, e.g.*, *Herron*, 861 F.3d at 167 ("[W]e apply the framework the Supreme Court established in *Lebron* for determining whether a 'Government-created and -controlled corporation[ ]' is a government actor for constitutional purposes."); *Mik*, 743 F.3d at 168. And two additional Courts of Appeals have applied *Lebron* to hold that the Enterprises are not government actors for other purposes. *See Meridian Invs., Inc. v. Freddie Mac*, 855 F.3d 573, 579 (4th Cir. 2017); *U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*, 813 F.3d 1259, 1261 (9th Cir. 2016). Thus, four federal appellate courts agree that under *Lebron* Freddie Mac and Fannie Mae are not government actors even though they are in FHFA's conservatorship. These courts' uniform analysis and application of *Lebron* is correct.

In *Lebron*, the Supreme Court held that where "[1.] the Government creates a corporation by special law, [2.] for the furtherance of governmental objectives, and [3.] retains for itself *permanent authority* to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment." 513 U.S. at 399 (emphasis added). In holding that Amtrak was part of the government, the Supreme Court emphasized that "Amtrak is not merely in the *temporary* control of the Government (as a private corporation whose stock comes into federal ownership might be)," but rather was under *permanent*

- 6 -

government control.  *Id*. at 398 (emphasis added).  *Lebron* remains the operative test and permanent control is a necessary element.  *See Dep't of Transp. v. Ass'n of Am. Railroads*, 135 S. Ct. 1225, 1233 (2015) (citing favorably to *Lebron*); *Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 492 (1st Cir. 1996) (recognizing that permanent control is a necessary element).

*Lebron* confirms that conservatorship does not transform Freddie Mac into a government actor for purposes of constitutional claims because the conservatorship does not grant the government permanent authority to appoint a majority of Freddie Mac's directors.  Plaintiff alleges that "the Board of Directors of Freddie Mac is entirely appointed by FHFA," Compl. ¶ 31, but omits that as a matter of law, FHFA holds that prerogative only as Conservator, not as Freddie Mac's regulator.  *Compare* 12 U.S.C. § 1452(a)(2)(A) (Freddie Mac charter provision stating that "[t]he Board of Directors of the Corporation shall consist of 13 persons . . . who shall be elected annually by the voting common stockholders.") *with* 12 U.S.C. § 4617(b)(2)(A)(i) (FHFA, when appointed "as [C]onservator," shall "by operation of law, immediately succeed to . . . all rights, titles, powers, and privileges of [Freddie Mac], and of any stockholder, officer, or director.").  Accordingly, FHFA's authority to appoint Freddie Mac's directors will last only as long as the conservatorship remains in place, and conservatorship is inherently temporary.

As the D.C. Circuit explained in *Herron*:

> While the conservatorship authorized the government to exercise substantial control over Fannie Mae, "that control is temporary, 'as a private corporation whose stock comes into federal ownership might be.'"  *See Meridian Invs.*, 855 F.3d at 579 (quoting *Lebron*, 513 U.S. at 398, 115 S.Ct. 961).  Thus, the government's indefinite but temporary control does not transform Fannie Mae into a government actor.  *See Lebron*, 513 U.S. at 399, 115 S.Ct. 961 (citing *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 152, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974)).

861 F.3d at 169.

Plaintiff's assertion that "[t]here is no other law, regulation, policy or directive that provides either a date or specifies conditions by which FHFA's control over Freddie Mac will terminate," Compl. ¶ 22, is true but beside the point.  Whatever might be argued (or speculated) about the possible duration of the conservatorship, Freddie Mac is not subject to *permanent*

control by the government, as the conservatorship did not grant FHFA *permanent* authority to appoint a majority of Freddie Mac's directors.

Rather, in HERA, Congress empowered FHFA to act as conservator of Freddie Mac for purposes of "reorganizing, rehabilitating, or winding up [its] affairs." 12 U.S.C. § 4617(a)(2). This naturally limits the Conservator's authority to a certain resolution—"reorganizing, rehabilitating, or winding up [Freddie Mac's] affairs"; it does not grant FHFA permanent authority. Indeed, "[a]lthough there is no specific termination date, the purpose of the conservatorship is to restore [Freddie Mac] to a stable condition." *Herron*, 861 F.3d at 169. As a result, FHFA's (assumed) control is merely indefinite, not permanent. "Thus, the government's indefinite but temporary control does not transform [Freddie Mac] into a government actor." *Id*.

Nor can Plaintiff point to anything inherent in Freddie Mac's structure as indicative of permanent government control, as a comparison with Amtrak's structure in *Lebron* confirms. In *Lebron*, Amtrak's charter established permanent government control because "six of the corporation's eight externally named directors (the ninth is named by a majority of the board itself) are appointed directly by the President of the United States." 513 U.S. at 397. By contrast, Freddie Mac's charter has no such structure where the government permanently appoints Freddie Mac's directors—"The Board of Directors of the Corporation shall consist of 13 persons . . . who shall be elected annually by the voting common stockholders."[2] 12 U.S.C. § 1452(a)(2)(A).

Additionally, although the Congressional Budget Office ("CBO") included the Enterprises' operations in the federal budget and has said that the Enterprises are "effectively" part of the government for CBO's purposes, Compl. ¶¶ 13-14, the CBO has not said that the existing government control will be permanent, which is the relevant factor in the *Lebron*

---

[2] In *Lebron*, the Supreme Court focused solely on the permanent, structural control the government retained under the provision of Amtrak's charter that granted the President authority to appoint six of Amtrak's nine directors. *Lebron*, 513 U.S. at 397. The Court did not deem it significant that the President also had *temporary* authority, by virtue of a financial assistance arrangement, to appoint two additional directors; rather, the Court recites that as a fact but omits it completely from the analysis of whether Amtrak would be deemed a government actor. *Id.* at 397-99. This confirms that only permanent and structural indicia of control are significant to the analysis.

- 8 -

analysis. In fact, the CBO has noted that Freddie Mac and Fannie Mae "are not legally government agencies, and their employees are not civil servants." Compl., Ex. 2 at 2.

Plaintiff also seems to claim that Freddie Mac is under permanent control because "[e]ven if the conservatorship were terminated[,] Freddie Mac will remain subject to the control of the United States Treasury through the senior preferred stock purchase agreement [PSPA], senior preferred stock, and warrant to purchase common stock." Compl. ¶ 23. But as the Fourth Circuit recently held, "although the government does exert some control over Freddie Mac through the PSPA with Treasury, that control is *temporary* . . . . The Supreme Court has long held that, when the government acquires an ownership interest in a corporation, it acts—and is treated—as any other shareholder." *Meridian Invs., Inc.*, 855 F.3d at 579 (holding that Freddie Mac is not a government actor for statute-of-limitations purposes under 28 U.S.C. § 2401(a)) (citing *Lebron*, 513 U.S. at 398 and *Bank of U.S. v. Planters' Bank of Ga.*, 22 U.S. 904, 907 (1824)) (emphasis added).

Indeed, while the government undoubtedly would have temporally indefinite control over "a private corporation whose stock comes into federal ownership," that is the precise example the Supreme Court uses to illustrate the *absence* of permanent government control over the corporation. *Lebron*, 513 U.S. at 398 ("Amtrak is not merely in the *temporary* control of the Government (*as a private corporation whose stock comes into federal ownership might be*) (emphases added)."). Thus, conservatorship does not amount to permanent government control and does not impose government-actor status onto Freddie Mac; rather, Freddie Mac retained its pre-conservatorship status as a private actor for purposes of constitutional claims.

Under the *Lebron* framework, and as numerous courts have held, Freddie Mac is not a government actor that can be held liable for constitutional violations. This Court should hold the same.

## II.  THE CONSERVATOR IS NOT A GOVERNMENT ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS

Nor can Plaintiff plausibly argue the FHFA, as Freddie Mac's Conservator, is a

- 9 -

government actor for purposes of Plaintiff's constitutional claim.[3] Federal courts that have addressed the question of whether FHFA, as Conservator, is a federal actor for purposes of constitutional claims have, again, unanimously held that it is not. This is so because HERA provides that the Conservator—by operation of law, upon the inception of conservatorship—succeeds to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director." 12 U.S.C. § 4617(b)(2)(A)(i). As the D.C. Circuit explains, HERA "evinces Congress's intention to have the FHFA step into [Freddie Mac]'s private shoes" and for FHFA to "shed[] its government character," not vice versa. *Herron*, 861 F.3d at 169 (alteration in original) (citation omitted). Here, when FHFA acts in its capacity as Conservator, it stands in the shoes of Freddie Mac. Plaintiff's claim against FHFA is effectively a claim against Freddie Mac, which is not a government entity. Thus, acting as Conservator, FHFA is no longer acting as a government entity for purposes of constitutional claims.

All district courts that have addressed the issue have held the same. *See, e.g.*, *Syriani*, 2012 WL 6200251, at *4 ("[FHFA], as conservator for Freddie Mac, 'step[ped] into the shoes' of Freddie Mac . . . ."); *Shamoon*, 922 F. Supp. 2d at 645 ("FHFA, as conservator, merely 'steps into the shoes' of Freddie Mac, a private corporation."); *Parra v. Fannie Mae*, No. 13-cv-04031, 2013 WL 5638824, at *3 (C.D. Cal. Oct. 16, 2013) ("FHFA, which took over as Fannie Mae's conservator, also does not qualify as a government actor [for Fifth Amendment purposes]."); *Dias*, 990 F. Supp. 2d at 1061 ("Similarly, the FHFA, which took over as Fannie Mae's conservator, also does not qualify as a government actor.").

Similarly, the Fourth and Ninth Circuits each applied *Lebron* to FHFA as Conservator and held that because the Conservator assumes the Enterprises' private status, it is not a government actor. In the Fourth Circuit, the court held that "as conservator[, FHFA] steps into Freddie Mac's shoes, shedding its government character and also becoming a private party." *Meridian Invs., Inc.*, 855 F.3d at 579 (applying *Lebron* test in holding that Freddie Mac was not a government actor for statute-of-limitations purposes under 28 U.S.C. § 2401(a)). Similarly,

---

[3] Plaintiff sues FHFA in its capacity as Conservator of Fannie Mae, not as Regulator, and offers no allegation that could support a claim against FHFA as regulator.

the Ninth Circuit held that conservatorship "places FHFA in the shoes of Fannie Mae and Freddie Mac, and gives the FHFA *their* rights and duties, not the other way around." *Adams*, 813 F.3d at 1260-61 (applying *Lebron* test in holding that Freddie Mac and Fannie Mae are not "officers, employees, or agents of the federal government" for purposes of the False Claims Act). Indeed, the D.C. Circuit in *Herron* cited to these cases in its ruling. *Herron*, 861 F.3d at 169.

Cases involving other federal agencies acting as conservators or receivers confirm the point that they assume the private status of the entity in conservatorship or receivership and do not act as the government. In *O'Melveny & Myers v. FDIC*, the Supreme Court construed the materially identical language of 12 U.S.C. § 1821(d)(2)(A)(i), which applies to FDIC receiverships, as "indicat[ing] that the FDIC as receiver 'steps into the shoes' of the [pre-existing institution], obtaining the rights 'of th[e] institution' that existed prior to receivership." 512 U.S. 79, 86 (1994).[4] As Judge Lagueux of this District held, this is because "when the FDIC is acting as a receiver it is performing a function normally accomplished by a private entity rather than a federal agency. As a receiver, the FDIC does not act on behalf of the United States government, and it does not perform any function unique to the federal government. Instead, it acts on behalf of the failed bank in the interest of that bank's creditors." *Schock v. FDIC*, 118 F. Supp. 2d 165, 169-70 (D.R.I. 2000). Accordingly, the appointment of the FDIC as conservator or receiver of a financial institution means the FDIC assumes that entity's private status. *See, e.g.*, *Ameristar Fin. Servicing Co. LLC v. United States*, 75 Fed. Cl. 807, 812 (2007) (dismissing claim because the FDIC as conservator "was not acting as the United States"); *see also United States v. Beszborn*, 21 F.3d 62, 68 (5th Cir. 1994) (When acting "[i]n its capacity as receiver, the [Resolution Trust Corporation] stands as a private, non-governmental entity, and is not the Government for purpose of the Double Jeopardy Clause.").

---

[4] Because their statutory schemes are similar, courts routinely look to FDIC precedent as helpful in interpreting the legal obligations raised by HERA. *See, e.g.*, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 605 (D.C. Cir. 2017); *Cty. of Sonoma v. FHFA,* 710 F.3d 987, 993 (9th Cir. 2013).

- 11 -

Because FHFA as Conservator does not act as the United States for constitutional claims, the Court should enter judgment against Plaintiff.

## **CONCLUSION**

For the reasons set forth herein, Freddie Mac and FHFA respectfully request that the Court grant their motion for judgment on the pleadings and enter judgment in their favor.

Respectfully submitted,

Dated: December 15, 2017

| | |
|---|---|
| FEDERALHOUSING FINANCE AGENCY AND FEDERAL HOME LOAN MORTGAGE CORPORATION, | FEDERAL HOUSING FINANCE AGENCY |
| By Their Attorney, | By Its Attorney, |
| */S/ Samuel C. Bodurtha* | */S/ Michael A.F. Johnson* |
| Samuel C. Bodurtha, Bar No. 7075 | Michael A.F. Johnson (*pro hac vice*) |
| HINSHAW & CULBERTSON LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| 321 South Main Street, Suite 301 | 601 Massachusetts Ave., NW |
| Providence, RI 02903 | Washington, DC 20001 |
| (401) 751-0842 | (202) 942-5000 |
| (401) 751-0072 (fax) | (202) 942-5999 (fax) |
| sbodurtha@hinshawlaw.com | Michael.Johnson@apks.com |

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the District of Rhode Island by using the CM/ECF system on December 15, 2017. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/S/ Samuel C. Bodurtha*
Samuel C. Bodurtha

300877437v1 0994149